**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ARTURO PEREZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-0196 |
| § | |
| GUARDIAN EQUITY MANAGEMENT, § | |
| LLC, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Arturo Perez sued his employer, Guardian Equity Management, LLC ("GEM"), for violating the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Perez claims that he was not paid for overtime hours he worked and reported to his employer. He seeks conditional certification of a class of GEM employees working as the lead maintenance person at each of 11 apartment complexes managed by GEM. (Docket Entry No. 12). GEM responded, (Docket Entry No. 14), and Perez replied. (Docket Entry No. 15). GEM has also moved for summary judgment that it acted in good faith and that if it violated the FLSA, its violation was not willful. (Docket Entry No. 16). Perez responded, (Docket Entry No. 17), and GEM replied. (Docket Entry No. 18).

Based on the record; the motions, responses, and replies; and the relevant law, GEM's motion for summary judgment is denied, and Perez's motion for conditional certification is granted. By August 1, 2011, GEM must disclose the names, current or last known addresses and telephone numbers, and dates of employment of the lead maintenance persons who worked for GEM in the last three years. By August 1, 2011, the parties must also submit a proposed form of notice. The 90 day opt-in period will begin when this court approves the form of notice.

The reasons for these rulings are explained in detail below.

## I. Background

GEM owns and operates 11 apartment complexes in Houston. Perez worked as a lead maintenance person at GEM's Spring Forest Apartments for more than three years, ending on January 19, 2010. GEM's lead maintenance employees are "responsible for supervising all on-site maintenance operations" at their complex and are "also required to serve on-call." (Docket Entry No. 12, Ex. 4). The maintenance persons were hourly employees entitled to be paid overtime for time worked in excess of 40 hours in a work week.

The apartment manager of the complex where Perez worked was Maria Roman, who in turn reported to Veronica Chavez, GEM's district manager since 2007. Chavez supervised "managers and communities" at four of GEM's apartment complexes. (Docket Entry No. 12, Ex. 2, at 13).

During the time Perez worked, the method for hourly employees to record their time changed. For a time, employees recorded their time worked by punching a timecard in a machine. These records were "reviewed by each employee to make sure it was the hours they worked." (Docket Entry No. 15, Ex. A, at 52). Every two weeks, Roman reviewed the signed timecards from employees at the Spring Forest complex and put the information into a computer-generated spread sheet. The computer record was then sent to Chavez to be used for payroll calculations. (Docket Entry No. 12, Ex. 2, at 47–48). Monina Mercado later took over Chavez's payroll responsibilities. For some period, the time clock was not used and instead the employees manually wrote down their time worked, and the handwritten records were faxed to GEM's corporate office. After Roman had worked at the complex for approximately a year, the system changed from paper punchcard to a computerized log. (*Id.* at 50–51). Employees would enter time records on the computer and Roman

would send the hours to the corporate office. Mercado never checked the spreadsheets sent to her by complex managers such as Roman to ensure their accuracy. (Docket Entry No. 16, Ex. B, at 19).

Perez claims that he recorded his time correctly. (Docket Entry No. 14, Ex. G, at 54). Perez claims that in weeks when he worked overtime, Maria Roman changed his time records when she entered them into the computer to show that he had not worked overtime. (Docket Entry No. 12, Ex. 1, ¶ 8). Perez was the employee at the complex who worked the most overtime hours. He testified that Roman told him that Chavez had instructed her to limit overtime for the entire staff to eight hours in a two week period or "not to pay overtime," and instead to offer compensatory time off. Roman would "change the time on the computer" to show that no overtime had been worked because she could only record a limited amount of overtime for all the employees. (*Id.*, ¶ 9; Docket Entry No. 14, Ex. G at 55). Perez claims that "if we put like on 15 to 20 [overtime] hours, [Roman] said she is going to help me with one or two hours because she kn[e]w that I was working." (Docket Entry No. 14, Ex. G at 54). Perez did not tell Chavez or other supervisors above Roman about the inaccuracies in his recorded hours or his problems receiving overtime pay. (*Id.* at 58). He testified that Roman knew the hours he worked, including the uncompensated overtime. Perez claims he was never given days off "because always something to do in the apartments, always." (Docket Entry No. 14, Ex. G, at 56). He feared that he would be fired if he complained about the inaccurate reporting of his hours.

Roman testified that on occasion, Perez forgot to clock in or out. On some occasions, she called him back to the office to have him record his time. But on these and other occasions, Roman simply wrote down the time Perez worked on the computerized spreadsheets according to her recollection. Even when he wrote down the time, she did not believe he did so accurately. (Docket

3

Entry No. 14, Ex. C at 34–37). There are some discrepancies between the time cards Perez punched and the spreadsheets Roman generated and sent to the corporate office. (Docket Entry No. 15, Ex. B). Roman testified that on multiple occasions, she reprimanded Perez verbally for failing to record his time properly. Roman admitted that she never issued a written reprimand or notified her supervisor, as company policy required. (Docket Entry No. 14, Ex. C, at 40).

Roman claims that Chavez told her that "due to financial constraints Guardian did not want to pay for more than eight hours of overtime for an employee in a time period." (Docket Entry No. 14, Ex. B, at 71). However, she testified that she was never told to change an employee's time records if they worked in excess of that amount. Instead, she said that she enforced the company policy by monitoring employees "to make sure they never exceeded eight hours." (*Id.* at 22). Roman also testified that Perez did not work more than eight hours of overtime in a two-week period without proper payment or without taking compensatory time off. (*Id.* at 72).

Mercado and Chavez testified that they did not instruct Roman that GEM did not want to pay its employees overtime, and that such was not the company policy. However, employees were instructed that they needed to get approval from Chavez for more than 10 hours of overtime in any two-week pay period. (Docket Entry No. 12, Ex. 2 at 48–49; Docket Entry No. 14, Ex. B, at 16). Alternatively, employees could take time off to compensate for overtime they had already worked. (Docket Entry No. 14, Ex. C, at 75). Roman stated in her deposition that Chavez regularly encouraged Perez to take compensatory time off after he had accrued too much overtime. (Docket Entry No. 15, Ex. A, at 118). As noted, Perez disputes this testimony and instead asserts that there was always work he was required to do.

4

Perez sued GEM for violating the FLSA on January 21, 2010. Perez alleges that he was "required to work overtime in excess of 40 hours during each and every seven-day work week" during his employment for GEM. Perez claims that GEM "knowingly, willfully, or with reckless disregard" did not pay him for all his overtime work. He seeks back pay, liquidated damages, and attorneys fees and costs for three years of alleged FLSA violations. (Docket Entry No. 5, ¶¶ 1–29).[1] GEM counterclaimed for theft, conversion, fraud, unjust enrichment, and breach of fiduciary duty. (Docket Entry No. 3 at ¶¶ 47–74).

Perez requests conditional certification of a class of individuals who worked in the lead maintenance position at each of the 11 apartment complexes GEM managed during the relevant period. GEM argues that Perez has failed to show that the proposed class members are similarly situated. GEM also moved for summary judgment that there is no basis for certification as a collective action, that it acted in good faith, and that it committed no willful violation of the FLSA. Perez responded that genuine issues of material fact preclude summary judgment.

The arguments are analyzed below.

## II. The Applicable Legal Standards

### A. Issuance of Notice and Conditional Certification

The FLSA mandates that a covered employee be paid one and one half times the "regular rate" for hours worked beyond forty hours each week. 29 U.S.C. § 207(a)(1); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476 (1948); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 300 (5th Cir. 2003); *Garza v. Smith Int'l, Inc.*, Civ. A. No. C–10–100, 2011 WL 338819,

---

[1] Perez also asserted a claim of unjust enrichment against GEM for its failure to reimburse him for the value of his tools lost in a fire at the apartment complex. (*Id*. at ¶¶ 47–53). He later withdrew this individual claim to pursue certification as a collective action.

at *1 (S.D. Tex. Feb. 2, 2011); *Halford v. No Hope Logging, Inc.*, 727 F. Supp. 2d 523, 527 n.3 (S.D. Miss. 2010). Section 216(b) of the FLSA allows employees to proceed collectively. It provides:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).

Notice does not issue unless a court conditionally certifies the case as a collective action. Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the class action–based *Shushan* approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). Most courts, including district courts in this circuit, use the "two-step *ad hoc* approach" as the preferred method for the similarly situated analysis, rather than the Rule 23 requirements. *See, e.g.*, *Maynor v. Dow Chemical*, 671 F. Supp. 2d 902, 930–31 (S.D. Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc.*, Civ. A. No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Villatoro v. Kim Son Restaurant,*

*L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Mooney*, 54 F.3d at 1217 (declining to mandate either theory); *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney*, 54 F.3d at 1213. The first step of analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *See id.* at 1213–14. The court's decision at this stage is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *Id.* at 1214 n.8. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007). A factual

basis for the allegations is needed to satisfy the first step. *See Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden."); *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

At the first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see also Basco*, 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id*. If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL

1497709, at *3. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F. Supp. 2d at 508.

In some cases, when "discovery is largely complete and the matter is ready for trial," the court combines the two steps of the *Lusardi* analysis when determining if a proposed class should be certified. *Mooney*, 54 F. 3d at 1214; *Basco*, 2004 WL 1497709 at *4; *Pfohl v. Farmers Ins. Grp.*, No CV-03-3080 DT (RCX), 2004 WL 554834, at *2–3 (C.D. Cal. Mar. 1, 2004). *Basco*, 2004 WL 1497709 at *8; *Mooney*, 54 F. 3d at 1213 n. 7, *citing Lusardi*, 188 F.R.D. at 359. In this case, however, there is scant information about how other lead maintenance persons working under different managers were compensated for overtime work. The discovery that has been conducted is properly considered in determining whether to issue notice and conditionally certify a collective action. Without more information about the relevant similarities and differences between class members, this court cannot perform the step-two analysis. This case is appropriately considered under the first stage.

Many courts have stated that putative class members need only show that they were affected by a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry at the first step. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04–CV–00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England*, 370 F. Supp. 2d at 507 (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp.2d 91, 95–97 (S.D.N.Y. 2003) (citations omitted) (a plaintiff must allege a common policy or

9

plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.,* 61 F. Supp.2d 1129, 1139 n.6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). A common policy is not necessarily required and uniformity is clearly not necessary. "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) [,so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases).

### B. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation

omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Quality InfusionCare, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III.    Analysis**

### A. The Motion for Conditional Certification

Perez asserts, and the defendant does not dispute, that the lead maintenance persons had similar duties and responsibilities. The issue is whether there was a common policy with respect to compensation for overtime. Perez asserts that there was a company policy of limiting overtime, which was communicated to his manager and resulted in her recording and transmitting inaccurate information on the number of hours he worked to avoid paying overtime. Perez asserts that he could not take compensatory time for the uncompensated overtime hours because there was too much work at the complex. He also testified that there were no accurate records showing how much compensatory time he was entitled to take. GEM asserts that its written policy was to pay for overtime hours worked. GEM asserts that it required employees who worked more than 10 hours of overtime in a work week to obtain advance permission to do so, but that all overtime hours worked and recorded were properly compensated. GEM asserts that a collective action cannot be certified because if a practice existed at the apartment complex where Perez worked to deny him overtime pay, it was limited to that complex. GEM asserts that Roman continuously allowed Perez to misrecord his time and violated company policy by not issuing written reprimands or other discipline. In short, GEM asserts that any problems Perez experienced in obtaining proper overtime compensation — and GEM appears to acknowledge that there are disputed facts material to determining whether these problems existed — were problems personal to him because of the manager at the complex where he worked.

Perez submitted an affidavit in which he testified that the direction Chavez gave Roman about limiting overtime to eight hours in a two-week time period for the entire staff of each apartment complex was communicated to all the managers, not just Roman. Perez testified that

Roman followed this directive when she misrecorded his time so that it did not reflect overtime hours that would exceed the limit imposed by the company. Perez also testified that he has spoken with lead maintenance men at other GEM apartment complexes, including Clearbrook Apartments, Plaza Del Sol Apartments, and the Villagio Apartments, and they complained to him that they routinely worked more than 40 hours per week and were not paid overtime. (Docket Entry No. 17, Ex. 1).

In this case, the issue is not merely whether there was a single explicit policy governing compensation. The issue is whether there was a common practice of deviating from the policy. Perez has presented evidence that there was a practice of deviating from the express written policy at the complex where he worked. He has also presented the required showing that the directive to deviate from the written policy came from corporate management and was not merely communicated to the manager of the apartment complex manager where he worked. The similar complaints voiced by lead maintenance persons at other apartment complexes supports his allegation. *Yaklin v. W-H Energy Servs., Inc.*, No. CV C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) (finding that an affidavit that "fail[ed] to discuss the job responsibilities and payment provisions of his allegedly similarly situated peers" did not weigh in favor of certification); *Prater*, 2007 WL 4146714 at *2 ("The putative class members in a FLSA collective-action suit must be similarly situated in terms of job requirements and similarly situated in terms of payment."); compare *Harper v. Lovett's Buffet, Inc*., 185 F.R.D. 358, 363 (M.D. Ala. 1999) (limiting the class to one location because "Plaintiffs have not made a showing that any hourly wage employee at any of Defendant's restaurants, other than at the restaurant in Dothan where the named, individual Plaintiffs and the individuals who have filed Notices of Consent to be a Party Plaintiff worked, was subjected to

employment practices which potentially violated the FLSA"). It is undisputed that GEM had a company policy of requiring each manager to assemble and prepare time records that were sent to a central corporate payroll director, and that this director did not check or verify the time reports that were sent to her. *See Gonzalez v. Ridgewood Landscaping, Inc.*, No. H-09-CV-2992, 2010 WL 1903602 *6 (S.D. Tex. May 10, 2010) (finding that potential plaintiffs were similarly situated because they alleged a uniform company policy of not paying overtime, which was administered at different sites by individual supervisors who all reported to the same payroll director.). Perez has made the requisite showing of a common policy to satisfy the first stage of collective action certification.

The final question under the first stage of the analysis is whether evidence shows that other aggrieved employees would want to join the class. "[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007). Perez has identified other lead maintenance men with similar complaints, but has indicated that some would be hesitant to join the suit out of fear of losing their jobs. Although Perez has not conclusively made a showing of interest in the case, courts have often relaxed the interest requirement in similar circumstances. Perez faces the problem of a work environment that offered little contact with other potential plaintiffs, which limits his ability to contact them about the suit without the information that defendants refused to disclose in discovery. *See Detho v. Bilial*, No. 07-CV-2160, 2008 WL 2962821, at *3 (S.D. Tex. Jul. 29, 2009) (characterizing the issue as a "chicken and egg" problem); *accord Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-CV-00722-RCJ-PAL,

2009 WL 102735, at *12 (D. Nev. Jan. 12, 2009). Perez testified that to the extent he is able to contact other potential class members, he has been told that they fear retaliation. *Cf. Prater*, 2007 WL 4146714, at *8 (finding interest to opt-in among potential additional plaintiffs although no affidavits were submitted, and noting that allegations of retaliation were relevant to the analysis of that factor). Perez to has made a sufficient showing under the circumstances of his employment.

The motion for conditional certification is granted. The motion for summary judgment is denied to the extent it asks this court to find that certification is unwarranted.

### B.     Willfulness and Good Faith

GEM argues that there is no evidence of a willful violation and that the record demonstrates, as a matter of law, that it acted in good faith. Willfulness affects the statute of limitations. If a violation is not willful, the limitations period is two years. 29 U.S.C. § 255(a). The limitations period extends to three years if the employee can show the employer's violation was willful. *Id.* A violation is willful if the employer "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The plaintiff bears the burden of showing a willful FLSA violation. *Id.*; *see also Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim."). Willfulness is a different concept from "good faith." *Stokes v. BWXT Pantex, LLC*, No. 10-10470, 2011 WL 1664670, at *2 (5th Cir. May 4, 2011) (per curiam) (unpublished) (citing cases). An employer bears the burden of showing good faith to avoid mandatory liquidated damages under the FLSA. *Id.* A finding of willfulness precludes a finding

of good faith. *Singer*, 324 F.3d at 823 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Lee v. Coahoma Cnty.*, *Miss.*, 937 F.2d 220, 226 (5th Cir. 1991).

GEM first argues that it did not violate the FLSA because Perez failed to notify it of his overtime hours. The FLSA requires an employer to pay overtime if it possessed actual or constructive knowledge of the employee's overtime work. *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir. 1995). If an employer knows its employee worked overtime, it must pay overtime wages "even if the employee does not make a claim for the overtime compensation." *Id.* (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). Perez testified that he submitted correct time records and that he was not paid. To the extent it is unclear how overtime Perez worked, that does not require summary judgment. "It is . . . a fundamental precept of the FLSA that an employee 'should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate.'" *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 989 (W.D. Tenn. 2011) (quoting *Mendez v. Bray*, 618 F. Sup. 579, 587 (W.D. Mich. 1985)); *see also Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) ("In the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."). GEM is not entitled to summary judgment that it owes Perez no overtime compensation.

GEM relies on its written policy stating that it will pay overtime compensation for hours worked in excess of 40 hours in a work week to show that it committed no willful violation and acted in good faith. This policy does not, however, require summary judgment because the evidence suggests that GEM violated its policy. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288–89 (2d Cir. 2008); *Monroe*, 763 F. Supp. 2d at 991 (citing *Reich v. Dep't of Conservation & Natural Res.*,

28 F.3d 1076, 1083 (11th Cir. 1994)); *cf.* 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. . . . The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). Perez testified that he submitted correct time records but was not paid overtime for all the hours he worked beyond 40 in a work week because Chavez had instructed Roman to limit the number of hours of overtime reported. Perez's testimony that his timesheets were routinely altered to deny him overtime presents a genuine issue for trial on willfulness. *See Monroe*, 763 F. Supp. 2d at 991–92 (denying summary judgment when there was evidence that supervisors altered time records even though corporate policy required paying overtime rates for hours worked in excess of 40 in a work week). Because there is a fact issue on willfulness, there is also a fact issue on good faith. *See, e.g.*, *Singer*, 324 F.3d at 823.

## IV.     Conclusion

GEM's motion for summary judgment is denied. Perez's motion for conditional certification is granted. This court conditionally certifies a class consisting of: All individuals employed by GEM in the lead maintenance position at any time within the last three years.

By **August 1, 2011**, GEM must provide the plaintiffs with the names, current or last known addresses and telephone numbers, and dates of employment of all lead maintenance men who worked for GEM at any time within the last three years.

Also by **August 1, 2011,** the parties must submit a proposed notice. The **90-day** opt-in period will begin when this court approves the form of notice.

SIGNED on July 7, 2011, at Houston, Texas.

*Lee H. Rosenthal*
Lee H. Rosenthal
United States District Judge